UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON CONRAD PEREZ,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>Defendant. | Case No. 2:23-cv-00396-JDP (SS)<br><br>**ORDER**<br><br>DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 15 & 19 |

Plaintiff, who suffers from diabetes, hypertension, obesity, degenerative disc disease, and "status post" femur and wrist fractures, challenges the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act. Both parties have moved for summary judgment. ECF Nos. 15 & 19. For the reasons discussed below, plaintiff's motion is denied, and the Commissioner's cross-motion is granted.

**Standard of Review**

Under 42 U.S.C. § 405(g), the court reviews the Commissioner's decision to deny benefits to determine whether: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner applied correct legal standards. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d

1

1157, 1161 (9th Cir. 2012). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). To determine whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 710 (9th Cir. 1998).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court, however, will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

In February 2020, plaintiff filed an application for SSI, alleging disability beginning January 8, 2016. Administrative Record ("AR") 382-02, 475.[1] After his applications were denied initially and upon reconsideration, a telephonic hearing was held before an Administrative Law Judge ("ALJ"). AR 45-68, 116-27, 129-56. On June 8, 2022, the ALJ issued a decision finding that plaintiff was not disabled. AR 17-44. Specifically, the ALJ found:

    1. The claimant has not engaged in substantial gainful activity since February 29, 2020, the application date.

    2. The claimant has the following severe impairments: diabetes mellitus, hypertension, obesity, degenerative disc disease of the lumbar spine, hernia, and status post femur fracture and left wrist fracture.

    * * *

    3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

    * * *

    4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except frequent use of foot controls on the right; no climbing ladders, ropes, and scaffolds; occasional climb ramps and stairs, balance, stoop, crouch, and crawl; frequently finger with the left upper extremity nondominant hand; avoiding concentrated exposure to extreme cold, fumes, odors, dusts, gases, and poor ventilation; and no heights or dangerous machinery.

    * * *

    5. The claimant has no past relevant work.

    6. The claimant was born [in] 1969 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age.

---

[1] The record reflects that plaintiff previously filed applications for benefits in 2009 and 2012 that were denied. *See* AR 117.

      7. The claimant has a limited education.

      8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

      9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

      * * *

      10. The claimant has not been under a disability, as defined in the Social Security Act, since February 29, 2020, the date the application was filed.

AR 23-36 (citations to the code of regulations omitted).

Plaintiff requested review by the Appeals Council, but the request was denied. AR 1-5. He now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Analysis

Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to properly evaluate the opinions of consultative examiners, Dr. Muhammad Jawad, M.D., and Dr. M. Jakubowski, Psy.D. ECF No. 15 at 3.

**A.    Legal Standard for Evaluating Medical Opinion Evidence**

In 2017, revised Social Security Administration regulations took effect concerning the evaluation of medical opinions. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *See* 20 C.F.R. § 416.920c(a). The ALJ determines which medical opinions are most "persuasive" by focusing on a variety of factors: (1) supportability; (2) consistency; (3) relationship with the claimant—including length of treatment, frequency of examinations, purpose and extent of treatment, and whether the medical source examined the claimant as opposed to reviewing only the documentary medical evidence; (4) the medical source's area of specialty; and (5) "other" factors, such as the impact of any new evidence received after a medical source has provided a

1  medical opinion.  20 C.F.R. § 416.920c(c)(1)-(5).

2  The factors of "supportability" and "consistency" are the "most important" when determining the persuasiveness of medical opinions, and the ALJ must explain how both were considered.  20 C.F.R. § 416.920c(b)(2).  Under the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  20 C.F.R. § 416.920c(c)(1).  Under the "consistency" factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. § 416.920c(c)(2).  The ALJ is only required to address the remaining factors when "two or more medical opinions . . . about the same issue are equally well-supported . . . and consistent with the record . . . but are not exactly the same."  20 C.F.R. § 416.920c(b)(2)-(3).

### B. Dr. Jawad's Opinion

On May 23, 2021, plaintiff appeared for a consultative internal medicine evaluation with Dr. Jawad.  AR 4059-66.  Plaintiff used a cane for assistance and had an antalgic gait; he exhibited difficulties when walking, sitting, getting on the examination table, and taking off his shoes and socks.  AR 4061, 4064.  With respect to plaintiff's past medical history, Dr. Jawad noted surgeries for fractures of his right ankle, right femur, and left wrist.  AR 4060.  Plaintiff had normal range of motion in his upper and lower extremities except for his left wrist, which showed effusion and swelling, and his right ankle, which showed swelling.  AR 4062-63.  Plaintiff's cervical spine had no abnormalities.  Range of motion in the lumbar spine was limited, and Dr. Jawad observed evidence of muscle spasms or increased muscle tone, and significant loss of lordosis.  AR 4063-64.  Plaintiff's straight leg raise test was positive, and his maximum grip strength was thirty pounds in his right hand, and fifteen pounds in his left hand.  AR 4064.

For exertional limitations, Dr. Jawad opined that plaintiff was able to lift and carry fifteen pounds frequently and thirty pounds infrequently; stand and walk one to two hours during an eight-hour workday; remain seated four to five hours during an eight-hour workday; and ambulate as needed for banking, shopping, and carrying out basic self-care needs.  Dr. Jawad further opined

that plaintiff was not able to push or pull because of radiculopathy,[2] pain in the lower back and right lower extremity, and post-traumatic arthritis. Dr. Jawad also included a cane as an assistive device. AR 4065. Next, Dr. Jawad opined that plaintiff's radiculopathy and "RLE pain and deficits" warranted the following postural limitations: he should not stoop, crouch, kneel, or crawl; and he should not climb ramps, stairs, ropes, ladders, or scaffolds. AR 4065. Dr. Jawad also assigned environmental limitations: no extreme cold based on "RLE and back pain with radiculopathy"; no wetness or heights based on fall risks; and no machinery based on narcotics use. AR 4066.

The ALJ accepted Dr. Jawad's opinion as only "partially" persuasive. AR 33. Consistent with Dr. Jawad's opinion, the ALJ limited plaintiff's RFC to light work.[3] *Id.* The ALJ, however, added further restrictions to account for plaintiff's "surgical conditions" and the findings of reduced range of motion in the left wrist and right ankle: plaintiff was limited to frequent fingering with his left hand and to frequent use of foot controls with his right foot.[4] *See id*. Also consistent with Dr. Jawad's opinion, the ALJ adopted postural limitations to prohibit climbing ladders, ropes, and scaffolds, along with environmental limitations to extreme cold, heights, and dangerous machinery. The ALJ rejected the remainder of Dr. Jawad's limitations as not fully supported by the clinical findings and inconsistent with other medical evidence.[5]

To the extent that Dr. Jawad based some limitations on radiculopathy, the ALJ discounted the restrictions as inadequately supported by the underlying clinical data. Citing the normal examination findings concerning strength, sensation, and range of motion in the lower extremities,

---

[2] Radiculopathy is caused by "a compressed nerve in the spine that can cause pain, numbness, tingling, or weakness along the . . . nerve." *Michele Ann H. v. Saul*, 2020 WL 5881960, at *4 (C.D. Cal. Sept. 30, 2020) (citation omitted).

[3] Dr. Jawad's opinion that plaintiff could lift a maximum of thirty pounds is not compatible with medium work, which involves lifting up to fifty pounds, but is consistent with light work, which involves lifting up to twenty pounds. *See* 20 C.F.R. § 416.967(b)-(c).

[4] Social Security Rule 83-10 defines "frequent" as "occurring from one-third to two-thirds of the time." *Titles II And XVI: Determining Capability to Do Other Work—The Medical-Vocational Rules of Appendix* 2, SSR 83-10.

[5] A comparison of Dr. Jawad's assessment and the RFC reflects that the ALJ did not accept Dr. Jawad's opinion with respect to: time limits for sitting and standing; the requirement of a cane for walking; "wetness" as an environment limitation; and the limitations prohibiting climbing ramps, climbing stairs, stooping, crouching, kneeling, and crawling.

6

except for the right ankle, the ALJ concluded that Dr. Jawad failed to identify any abnormalities, such as muscle atrophy, or other evidence to substantiate radiculopathy. *See* AR 33. It is the ALJ's responsibility to evaluate ambiguities and resolve conflicts in the evidence. *See Smartt v. Kijakazi*, 53 F.4th 489, 496 (9th Cir. 2022) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.") (quotations and citation omitted). In accordance with this directive, the ALJ permissibly concluded that the clinical data did not fully support Dr. Jawad's functional limitations based on radiculopathy.

The ALJ also found that Dr. Jawad's limitation requiring a cane for walking was not consistent with the evidence in the record. Although the ALJ acknowledged that various treatment records reflected that plaintiff ambulated with a cane or walker, the ALJ noted that other evidence demonstrated that he did not regularly use a cane or other ambulatory aid. *See* AR 27-28, 4203-07, 4309-11. The ALJ cited a treatment note from May 18, 2021—just five days before Dr. Jawad's examination—that reflected normal findings concerning ambulation, strength, coordination, and extremity movement. *See* AR 33, 4221. The ALJ also pointed out that when plaintiff appeared for his psychiatric examination on May 25, 2021, he was able to walk without assistance. *See* AR 33, 4069. While plaintiff is correct that the medical evidence includes numerous references to the use of a cane, that is not enough to demonstrate that the ALJ erred in rejecting Dr. Jawad's opinion. *See* ECF No. 15 at 15-16. "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotations and citation omitted); *see also Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) ("If the evidence can reasonably support either affirming or reversing the Commissioner's decision, [the court] may not substitute its judgment for that of the Commissioner."). In finding that plaintiff did not always use a walking cane and had no prescription for an ambulatory aid, the ALJ identified sufficient grounds for rejecting Dr. Jawad's assistive device limitation as inconsistent with other evidence.[6]

---

[6] Contrary to plaintiff's argument, Dr. Jawad's assessment—which simply lists a cane as an assistive device without any further explanation—is not sufficient to establish that an ambulatory aid was "medically required" within the meaning of Social Security Ruling 96-9p. *See* ECF No. 15 at 16-17; *Policy Interpretation Ruling*, SSR 96-9p ("To find that a hand-held assistive

Finally, the ALJ found that Dr. Jawad's assessment was inconsistent with the opinion of a non-examining consultative physician who reviewed the medical evidence at the reconsideration stage. *See* AR 33-34, 129-56. On June 9, 2021, Dr. H. Jone, M.D., concluded in relevant part that plaintiff was limited to medium work; could stand or walk for six hours, and sit for six hours; was limited in the lower right extremity with respect to pushing and pulling, in particular operating foot controls; could balance, kneel, crouch, and crawl occasionally; could never climb ladders, ropes, or scaffolds; was limited to frequently fingering with his left hand; should avoid concentrated exposure to extreme cold, machinery, and heights; and should avoid even moderate exposure to fumes, odors, gases, and poor ventilation. AR 144-48. The ALJ determined that Dr. Jone's opinion was partially persuasive because it properly noted inconsistencies with plaintiff's use of an assistive device and was adequately supported by the record. Citing evidence of plaintiff's recent hernia issues, the ALJ concluded that a reduction to light work was appropriate. *See* AR 34.

Dr. Jone's reconsideration report specifically references a treatment note from July 2020 that states a diagnosis of lumbar spondylosis "*without myelopathy or radiculopathy*."[7] *See* AR 139 (emphasis added); AR 4497. As Dr. Jone's opinion provides further support for the determinations that plaintiff did not have radiculopathy and did not require an assistive device, the ALJ reasonably relied on the reconsideration report as a reason to reject Dr. Jawad's limitations.

Based on the above, the court concludes that the ALJ reasonably interpreted the record, and that substantial evidence supports the ALJ's findings. The court further concludes that the ALJ sufficiently analyzed the supportability and consistency factors relative to Dr. Jawad's

---

device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)).

[7] Lumbar spondylosis means "abnormal wearing on the bones and cartilage in the spine." *Lumbar MRI Scan*, MedlinePlus, https://medlineplus.gov/ency/article/007352.htm (last visited on March 7, 2024).

Myelopathy describes "any neurologic deficit related to the spinal cord." *Myelopathy*, National Library of Medicine, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8128582/ (last visited on March 7, 2024).

opinion.

### C. Dr. Jakubowski's Opinion

The court next considers the opinion of Dr. Jakubowski, who performed a comprehensive mental status evaluation of plaintiff on May 25, 2021. AR 4069-73. Dr. Jakubowski observed that plaintiff had a friendly manner, was cooperative, and had good eye contact. Plaintiff complained that he experienced increasingly severe symptoms of depression, as well as PTSD and anxiety. He reported that he was often triggered by thoughts of a recent murder that he had witnessed, and that he worried about things outside of his control. He previously attended counseling and was prescribed Zoloft, Buspar, and Prazosin. AR 4069-70. He also reported that he had an abusive upbringing and had abused drugs. AR 4070. Plaintiff denied having limitations affecting daily self-care activities; he reported that he had no significant difficulties with shopping or independent living, and that he was able to independently prepare meals, perform light household chores, and manage his finances. AR 4071.

Dr. Jakubowski noted the following abnormalities: plaintiff's mood was depressed with a congruent affect, and he reported auditory hallucinations. AR 4072. All other exam results were normal: he was alert and fully oriented; his intelligence, ability to think abstractly, and ability to perform simple calculations were "intact"; his attention, concentration, fund of knowledge, and memory were "adequate"; his thought process was linear and logical; and his judgment and insight were "intact." AR 4071-72. Dr. Jakubowski stated the following diagnostic impression: PTSD, unspecified anxiety disorder, and unspecified depressive disorder. AR 4072.

For plaintiff's functional assessment, Dr. Jakubowski opined in relevant part that he was markedly limited in the following areas: the ability to maintain regular attendance in the workplace due to symptoms associated with PTSD and depression; the ability to complete a normal workday or workweek without interruptions resulting from his mental health issues; and the ability to deal with usual work environment stresses. AR 4072-73. Dr. Jakubowski further opined that plaintiff was moderately to markedly limited in the ability to perform work activities on a consistent basis and was moderately limited in the ability to perform work activities without additional supervision, because of symptoms that impacted attention, concentration, and memory. AR 4072.

1    Regarding social interactions, Dr. Jakubowski determined that plaintiff was moderately limited in
2    the ability to accept instructions from supervisors and in the ability to interact with coworkers and
3    the public, based on plaintiff's tolerance for stress and on psychiatric symptoms that impacted
4    socially acceptable engagement.  AR 4073.

5    　　　　The ALJ rejected Dr. Jakubowski's opinion as not persuasive, finding that it was not
6    supported by the examination findings and was inconsistent with plaintiff's mental health records.
7    *See* AR 25.  Specifically, the ALJ determined that Dr. Jakubowski's moderate and marked
8    limitations conflicted with the underlying clinical data, in particular the findings that plaintiff had
9    adequate concentration, attention, memory, and fund of knowledge.  *See* AR 25.  As discussed
10   above, Dr. Jakubowski found that plaintiff had a depressed mood and reported hallucinations but
11   observed no deficiencies in cognitive functioning.  In light of the limited abnormalities in the
12   clinical findings, the ALJ reasonably determined that the Dr. Jakubowski's assessment was not
13   sufficiently supported by the underlying clinical data.

14   　　　　The ALJ also discounted Dr. Jakubowski's limitations as inconsistent with other treatment
15   records and the opinion of a non-examining consultative physician.  AR 25.  The ALJ
16   acknowledged that plaintiff was diagnosed with generalized anxiety disorder and major
17   depressive disorder, and was prescribed psychotropic medications.  *See* AR 24, 25, 4513-16
18   (March 2022 progress note reflecting normal behavior, mood, and affect; diagnoses of anxiety
19   and depressive disorders; and prescriptions for Buspar and Lamictal).  The ALJ also considered a
20   July 2020 mental status exam that contained mixed clinical findings: plaintiff's mood was anxious
21   and depressed, and his perception was abnormal; on the other hand, his mental functioning was
22   normal in other respects, including insight, judgment, and thought processes, and he denied
23   hallucinations.  *See* AR 24, 3438-50.  Reviewing treatment records from 2017 to 2022, however,
24   the ALJ observed mostly normal findings.  *See* AR 25-26, 4077-4106 (group counseling notes
25   describing plaintiff as calm, friendly, and communicative); AR 3236 (August 2018 medical
26   record reflecting emergency treatment for abdominal pain and behavior disorder, with normal
27   psychiatric findings at the time of discharge); AR 3351-52 (September 2018 progress note
28   indicating normal mood with full affect, and that insight and judgment were intact and

appropriate); AR 3300 (May 2019 progress note reflecting that plaintiff reported no psychiatric symptoms in response to a depression survey); AR 3298 (September 2019 progress note reflecting that plaintiff denied symptoms of depression and anxiety); AR 3437 (September 2020 medical note stating that plaintiff failed to appear for a mental health treatment appointment); AR 4044 (March 2021 treatment note reflecting that plaintiff was cooperative, and had an appropriate mood and affect); and AR 4147 (emergency department discharge summary from July 2021 noting normal behavior, mood, and affect).

As part of the consistency evaluation, the ALJ pointed out that in June 2021, non-examining medical expert Renee McPherson Salandy, Ph.D., reviewed the evidence at the reconsideration stage and opined the following: plaintiff was able to follow one- or two-step commands but was moderately limited in carrying out detailed instructions; he could maintain sufficient attention and concentration to complete an eight-hour workday but was moderately limited in completing a normal workday and workweek without interruptions from his psychiatric symptoms; and he had moderate limitations concerning social interactions, and may function best with a supportive management style and minimal interactions with co-workers and the public. *See* AR 129, 140-52. In assigning these limitations, Dr. Salandy considered plaintiff's reported daily activities in his function report, noting that he experienced "social difficulties" but otherwise had the mental ability to manage basic activities of daily living. AR 142, 449-56. Dr. Salandy also found that some of plaintiff's allegations were "disproportionate" to the evidence. *Id.* The ALJ determined that Dr. Salandy's opinion was "not entirely persuasive" because it was "only somewhat supported" by the evidence. AR 25-26. Although the ALJ concurred with Dr. Salandy's opinion that the evidence was not sufficient to show any marked impairments in mental functioning, the ALJ rejected the moderate limitations, citing the "mostly benign" psychiatric findings in the record and plaintiff's low level of care. AR 26.

On this record, the court finds that the ALJ's reasoning for not adopting Dr. Jakubowski's moderate and marked limitations is based on an accurate interpretation of plaintiff's medical history. Accordingly, substantial evidence supports the ALJ's findings that plaintiff's mental status examinations yielded mostly normal results and that his overall mental health care

11

primarily consisted of medication management. Indeed, after plaintiff stopped attending group counseling in March 2018, there are no records of any further psychiatric care that involved consistent, significant treatment with a mental health professional. For these reasons, the ALJ sufficiently considered the supportability and consistency factors when rejecting Dr. Jakubowski's assessment.

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 15, is denied.

2. The Commissioner's cross-motion for summary judgment, ECF No. 19, is granted.

3. The decision of the Commissioner of Social Security is affirmed.

4. The Clerk of Court is directed to enter judgment in the Commissioner's favor and against plaintiff.

IT IS SO ORDERED.

Dated:  March 13, 2024

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE